U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2016 AUG 25  AM 8: 15

CLERK
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ANNEMIEKE GRAVEN MEAU,       )
                             )
    Plaintiff,               )
                             )
    v.                       )    Case No. 5:15-cv-67
                             )
SENTRY CASUALTY COMPANY,     )
                             )
    Defendant.               )
                             )

**OPINION AND ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS**
(Doc. 45)

Plaintiff Annemieke Graven Meau brings this case against her former employer's workers' compensation carrier, Sentry Casualty Company ("Sentry"), alleging that, after she was injured in a workplace accident, Sentry failed to properly adjust her claims and wrongfully failed to pay benefits owed to her in a timely manner. (*See* Doc. 18, Am. Compl.) She claims insurance bad faith and violation of the Vermont Consumer Protection Act (VCPA), 9 V.S.A. § 2453(a), and seeks damages for emotional distress as well as punitive damages.[1] After answering Plaintiff's Amended Complaint, Sentry filed a Rule 12(c) Motion for Judgment on the Pleadings asserting, among other things, that the court lacks primary jurisdiction. (*See* Doc. 45.) Sentry seeks either dismissal or a stay until the conclusion of Meau's pending workers' compensation proceeding. (*See* Doc. 49 at 8.) The court heard argument on the motion on June 27, 2016, and has considered the parties' post-hearing memoranda (Docs. 49, 52).

---

[1] The Amended Complaint also asserts counts premised on ordinary breach of insurance contract and breach of the covenant of good faith and fair dealing. Meau has since withdrawn those claims. (*See* Doc. 46 at 20.)

## Background

In her Amended Complaint, Plaintiff alleges as follows. On March 3, 2010, she was employed by The Howard Center, Inc. as a Licensed Clinical Mental Health Counselor. On that date, while working on behalf of her employer at the H.O. Wheeler School in Burlington, Vermont, she was paged to assist the principal in restraining a student who had become violent and uncontrollable. She was injured in two falls while helping to restrain the student. In the second fall, she struck her head and neck against a cement wall, and then hit the base of her spine as she fell to the floor.

After the accident, and for many years since, Meau sought and received medical treatment for her injuries. She has been diagnosed with several conditions that she claims are the result of, or complications connected to, the injuries she received on March 3, 2010. Those conditions include: cervical soft tissue injuries with muscle spasms, neck pain, low back pain, prolapsed bladder with urinary issues, headaches, vertigo, hypertension, and traumatic brain injury (TBI).

Under Vermont's Workers' Compensation Act (VWCA), 21 V.S.A. §§ 601–711, Meau filed a claim for workers' compensation benefits with Sentry, and since then has received temporary total disability (TTD) payments due to her inability to return to work. Meau was also found to be entitled to vocational rehabilitation services, and a plan was submitted to Sentry for such services. Because Sentry never objected to the plan, the Vermont Department of Labor (DOL) deemed it to be valid and enforceable.

According to Meau, Sentry repeatedly failed to make timely payments to her for benefits to which she was entitled. She gives six examples of those alleged failures. First, she asserts that Sentry denied or failed to make timely payment of her September 30, 2011 vocational

rehabilitation services. Second, she alleges repeated and ongoing denials or failures to make timely payment for prescription drugs and other medical expenses. Third, Meau asserts that Sentry failed to make timely payment within 30 days of receipt of her ongoing trip reimbursement expenses, which she incurred to attend office visits with her physicians. Fourth, she alleges that Sentry denied or failed to make timely payment within 30 days of her receipt of vocational rehabilitation services. Fifth, she asserts that Sentry failed to make timely payments of her TTD check.

Finally, Meau alleges that Sentry failed to make payment when due for her physical therapy (PT). She asserts that Sentry failed to pay for PT that she needed to help treat constipation issues that she developed as a result of taking prescription opiate pain medications. According to Meau, because she did not receive timely PT, she now suffers constant physical pain and discomfort from a prolapsed bladder. Meau asserts that she has suffered financial, physical, and emotional injuries as a result of Sentry's alleged failures.

### Procedural History Regarding DOL Proceedings

Proceedings before DOL are ongoing in Meau's workers' compensation case. The court does not have the complete procedural history of the DOL proceedings, but the records available to the court show that DOL assigned file number BB-59825 to Meau's case, and has been involved in handling appeals related to Sentry's actions since 2012, if not before. (*See* Doc. 52-2.)[2] On December 11, 2012, DOL issued a decision regarding Meau's requests that multiple Form 2 Denials filed by Sentry be rejected. (Doc. 52-2.) In that decision, DOL ordered Sentry to pay medical benefits, concluding that several denials were not reasonably supported, and

---

[2] The court may take judicial notice of the DOL proceedings. *See McGRX, Inc. v. Vermont*, No. 5:10-cv-1, 2011 WL 31022, at *1 n.1 (D. Vt. Jan. 5, 2011) (noting that the court may take judicial notice of governmental agency determinations).

further ordered that Sentry pay medical benefits related to Meau's bladder prolapse. (*Id.* at 2.) The decision also ordered Sentry "to properly adjust this claim." (*Id.* at 2.)

On May 3, 2013, DOL entered an order requiring Sentry to immediately pay interim TTD benefits, noting that DOL had not received the required forms from Sentry, and that Sentry had acknowledged that Meau's checks were late or not timely issued. (Doc. 52-4 at 2.) The May 3 order assessed a 10% penalty on any overdue amount. (*Id.*)

On January 24, 2014, DOL Commissioner Anne M. Noonan issued an Opinion and Order addressing three issues:

1. Is Claimant's shingles disease causally related to her March 3, 2010 compensable injury?
2. What amounts, if any, is Claimant entitled to receive for unreimbursed mileage charges, medical bills, co-payments, pharmacy expenses and/or temporary total disability benefits (including cost of living adjustments and dependency benefits) as a consequence of her compensable injuries?
3. To what extent, if any, should interest and/or penalties be assessed on any of the above amounts?

*Meau v. The Howard Ctr. Inc.*, Opinion No. 01-14WC, at 1 (Vt. Dep't of Labor Jan. 24, 2014), *available at* http://labor.vermont.gov/wordpress/wp-content/uploads//MeauDecision.pdf. On the first issue, the Commissioner concluded that Meau had "failed to sustain her burden of proving the necessary causal relationship between her work injury and her shingles to establish compensability." *Id.* at 11.[3]

On the second issue, the Commissioner recited the evidence that Meau had presented showing amounts that Sentry owed her for unreimbursed mileage and medical expenses, medical bill co-payments, pharmacy expenses, dependency benefits, cost-of-living-adjustments, and other TTD benefit shortages. *Id.* at 9. The Commissioner found that Sentry had failed "almost from

---

[3] Meau appealed that determination to the Vermont Superior Court under 21 V.S.A. § 670 in a case docketed *Meau v. The Howard Center, Inc.*, No. 195-2-14 Cncv. The parties to that case subsequently settled.

4

the beginning to calculate Claimant's weekly benefit correctly." *Id.* The Commissioner noted that the May 3, 2013 order addressed those issues by ordering that all arrearages be paid, with interest and penalties. *Id.* The Commissioner found that "penalties and interest were appropriately assessed" and that the May 3, 2013 order was appropriately issued. *Id.*

The Commissioner also observed in her decision that neither party had addressed whether Meau had reached an end medical result as to shingles or any of her accepted injuries. Because Sentry had not filed the necessary form, it was difficult to determine which of Meau's other injuries Sentry had accepted as compensable. The Commissioner concluded that "[t]here seems little doubt that her cervical and lower back injuries are causally related to the March 2010 accident, but Defendant's position as to her claimed traumatic brain injury is less clear. Certainly more attentive adjusting and closer adherence to Vermont's workers' compensation rules would have provided more clarity." *Id.* at 10 n.6. Ultimately, the Commissioner ordered Sentry to pay:

> 1. Whichever unpaid claims for mileage expenses, medical bill co-payments, prescription charges and/or unreimbursed medical expenses are referable to injuries other than Claimant's shingles disease, with interest as calculated according to 21 V.S.A. § 664;
> 2. Temporary total disability payment shortages totaling $21,456.89 as of August 9, 2013, plus any arrearages that have accumulated since that date, with interest and penalties on any amounts still outstanding as calculated according to 21 V.S.A. §§ 650(e) and 664 and Workers' Compensation Rule 3.1200;
> 3. Ongoing temporary total disability benefits in accordance with 21 V.S.A. § 642 and continuing until lawfully terminated in accordance with Workers' Compensation Rule 18.1000; and
> 4. Attorney fees totaling $12,581.16, in accordance with 21 V.S.A. § 678.

*Id.* at 13.

On August 21, 2015, an independent medical examiner rendered a report and opinion regarding end medical result. (*See* Doc. 52-5 at 2.) Based on that report and opinion, Sentry

5

filed a "Notice of Intention to Discontinue Payments," seeking to discontinue TTD benefits. (*Id.* at 1–2.) Meau objected, arguing that she was not at an end medical result for the post-concussive/TBI component of her work injury (including post-concussive syndrome, migraines, and post-traumatic vertigo). On April 29, 2016, DOL issued an Amended Determination and Interim Order, finding that discontinuance of TTD benefits based on end medical result was not reasonably supported, and ordering Sentry to continue paying TTD benefits. (*Id.* at 3.) Also on April 29, 2016, acting on Sentry's request, DOL forwarded the matter to its formal hearing docket. (*Id.* at 1.) It appears that, prior to April 29, 2016, the issue of compensability regarding plantar fasciitis was also referred to the formal hearing docket. (*See* Doc. 52-6 at 1.)

As noted above, the court does not have records of the complete procedural history in the DOL proceedings. However, Sentry represents that the issues currently pending on DOL's formal hearing docket regarding Meau's case include the following:

    a)     whether the Plaintiff/Claimant's psychological issues are causally related to her March 3, 2010 work injury;
    b)     whether the Claimant's prolapsed bladder condition was causally related to her March 3, 2010 work injury;
    c)     whether the Claimant's concussion/post-concussive syndrome is causally related to her March 3, 2010 work injury;
    d)     whether the Claimant has reached end medical result for her March 3, 2010 work injury;
    e)     whether the Claimant's claim for medical benefits for plantar fasciitis is causally related to the Claimant's March 3, 2010 work injury;
    f)     and whether the Claimant is permanently and totally disabled as a result of her March 3, 2010 work injury.

(Doc. 49 at 3.) Meau agrees with that summary except she asserts that point (b)—whether her prolapsed bladder condition is causally related to her work injury—is not pending on the formal

6

hearing docket. (*See* Doc. 52 at 6–7.)[4]  Sentry represents that the parties have agreed to mediate the workers' compensation claim (and the claims in this court case) in fall 2016. (Doc. 49 at 4.)

## Analysis

The court begins with Sentry's primary-jurisdiction argument. "The doctrine of primary jurisdiction is concerned with 'promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties.'" *Ellis v. Tribune Television Co.*, 443 F.3d 71, 81 (2d Cir. 2006) (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63 (1956)). Courts apply the doctrine "whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Id.* (quoting *W. Pac. R.R.*, 352 U.S. at 64). There is no precise formula for applying the doctrine of primary jurisdiction, but courts typically consider the following four factors:

> (1) whether the question at issue is within the conventional expertise of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;
> (2) whether the question at issue is particularly within the agency's discretion;
> (3) whether there exists a substantial danger of inconsistent rulings; and
> (4) whether a prior application to the agency has been made.

*Schiller v. Tower Semiconductor Ltd.*, 449 F.3d 286, 295 (2d Cir. 2006) (quoting *Ellis*, 443 F.3d at 82–83). "The court must also balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings." *Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. & Tel. Co.*, 46 F.3d 220, 223 (2d Cir. 1995).

"Primary jurisdiction" is "neither jurisdictional nor primary"; if the doctrine applies, it "does not mean that the district court lacks *jurisdiction* over the dispute or that the litigant must

---

[4] According to Meau, Sentry withdrew denials for treatment related to the prolapsed bladder after she objected and pointed out that Sentry had never challenged the December 11, 2012 interim order requiring Sentry to pay benefits related to that condition. (*See* Doc. 52 at 7.)

bring the relevant claims to the administrative authority *first*." *MFS Sec. Corp. v. N.Y. Stock Exch., Inc.*, 277 F.3d 613, 621–22 (2d Cir. 2002). Thus, although Fed. R. Civ. P. 12(c) may ordinarily be employed to assert lack of subject-matter jurisdiction, Rule 12(b)(1) is not applicable.[5] If it finds that the doctrine of primary jurisdiction applies, the court "either stays the pending action or dismisses it without prejudice." *Johnson v. Nyack Hosp.*, 86 F.3d 8, 11 (2d Cir. 1996).

As Sentry points out, the Vermont Supreme Court has held that the doctrine of primary jurisdiction can apply "to the administrative adjudication system established for workers' compensation." *Travelers Indem. Co. v. Wallis*, 2003 VT 103, ¶ 14, 176 Vt. 167, 845 A.2d 316. *Travelers* does not suggest, however, that the mere presence of an administrative workers' compensation proceeding always triggers the primary-jurisdiction doctrine. Indeed, in *Travelers* the Vermont Supreme Court held that facial constitutional challenges to 21 V.S.A. § 662(b) should not have been dismissed. *Travelers*, 2003 VT 103, ¶ 19.[6] The court therefore proceeds to analyze the four factors listed above.

The procedural history regarding DOL proceedings recited above reveals that a prior application has been made, and is in fact ongoing. That factor therefore weighs in favor of stay or dismissal. On the other hand, the questions at issue in this court case are whether Sentry

---

[5] Sentry's motion may be more closely analogous to a Rule 12(b)(6) motion. *See* Fed. R. Civ. P. 12(h)(2)(B); *see also Tassy v. Brunswick Hosp. Ctr., Inc.*, 296 F.3d 65, 66 (2d Cir. 2002) (analyzing primary jurisdiction issue after district court granted dismissal under Rule 12(b)(6)).

[6] Other Vermont cases involving workers' compensation have held that primary jurisdiction did not prevent particular court proceedings. *See Smith v. Desautels*, 2008 VT 17, ¶ 15, 183 Vt. 255, 953 A.2d 620 (court could determine whether injured employee had waived his right to a civil suit against his employer); *Gallipo v. City of Rutland*, 2005 VT 83, ¶ 45, 178 Vt. 244, 882 A.2d 1177 (primary jurisdiction did not prevent court from adjudicating city's counterclaim seeking reimbursement of amounts paid as workers' compensation benefits on unjust-enrichment theory).

handled Meau's workers' compensation claim in bad faith, and whether Sentry's conduct violated the VCPA. Both of those questions are within the conventional expertise of judges.

At the same time, however, similar questions are within DOL's field and discretion. Namely, the VWCA specifically authorizes the Commissioner to assess administrative penalties against an insurance company upon a finding that the company "refused or neglected to comply with the reasonable rules and regulations of the Commissioner or any orders issued by the Commissioner, or to adjust and pay compensation and medical bills in accordance with the provisions of this chapter." 21 V.S.A. § 688(a). In addition to administrative penalties for such failures, the VWCA authorizes the Commissioner to refer insurance companies to the Commissioner of Financial Regulation for a hearing and "appropriate action" under Title 8. 21 V.S.A. § 688(c). Under Title 8, an insurance company "is responsible for payment of any consequential damages caused by improper delay in payment or settlement of claims to beneficiaries." 8 V.S.A. § 3665(a).[7]

It is true, as Meau points out, that the VWCA's administrative penalty provisions were not intended "to exclusively compensate employees for consequential damages resulting from intentional, reckless, and/or knowing bad faith in the rejection of and delay in providing workers' compensation benefits." *Buote v. Verizon New England*, 190 F. Supp. 2d 693, 707 (D. Vt. 2002).[8] However, the court in *Buote* did not mention the primary-jurisdiction doctrine, but was

---

[7] The statutory provisions discussed in this paragraph were all added after the Vermont Supreme Court's decision in *Demag v. Am. Ins. Cos.*, 146 Vt. 608, 508 A.2d 697 (1986), and the Court's statement in that case that the VWCA "contains no remedy for alleged insurance carrier misconduct or for alleged intentional infliction of emotional distress by the carrier." *Id.* at 611, 508 A.2d at 699.

[8] As described above, the VWCA authorizes more than just administrative penalties; it authorizes referral to the Commissioner of Financial Regulation, who may order payment of consequential damages under 8 V.S.A. § 3665(a). It remains true, however, that the VWCA alone may not make a claimant whole in cases of insurance bad faith.

instead analyzing whether insurance bad-faith claims were preempted by the VWCA. The primary-jurisdiction analysis is different. Even if DOL cannot award precisely the same *relief* as Meau seeks in this court case (e.g., punitive damages), the primary-jurisdiction analysis turns on the *issues* to be addressed rather than on the relief that might be awarded.

Here, it does not appear that the list of issues currently pending on DOL's formal hearing docket includes an inquiry into additional penalties or referral under 21 V.S.A. § 688.[9] Nevertheless, such an inquiry is within DOL's field and discretion. Even assuming that Meau has not raised her insurance-bad-faith and VCPA claims in the DOL's formal hearing docket, DOL is not precluded from evaluating Sentry's conduct in handling Meau's claims under 21 V.S.A. § 688. It would be premature for this court to conclude that DOL will not conduct such an analysis. If DOL does inquire further into Sentry's conduct in adjusting Meau's claims, there is at least some danger of inconsistent rulings, since both DOL and the court would be evaluating similar issues.

Applying the primary-jurisdiction doctrine in this case will be advantageous in several respects. It will help preserve judicial resources, while simultaneously allowing DOL—which is more familiar with Meau's case—to address, if necessary, whether action is warranted under 21 V.S.A. § 688. It will also allow the referral mechanism of 21 V.S.A. § 688(c) to be employed, if DOL finds that to be warranted. Maintaining primary jurisdiction with DOL will also avoid the possibility of inconsistent rulings.

Deferring to DOL's process may carry some "costs in complication and delay." *Ricci v. Chicago Mercantile Exch.*, 409 U.S. 289, 321 (1973) (Marshall, J., dissenting). Indeed, DOL already has a relatively full plate of other issues to address in Meau's workers' compensation

---

[9] As noted above, DOL previously assessed penalties against Sentry in its May 3, 2013 order, as affirmed by the Commissioner's January 24, 2014 Opinion and Order.

formal hearing docket. On the other hand, the parties are planning a global mediation later this year that might resolve all issues. Even if the mediation is unsuccessful, this is not a case where the plaintiff "has no means of invoking agency jurisdiction," where DOL's "rules do not guarantee the plaintiff a means of participation in the administrative proceedings," or where "the likelihood of a meaningful agency input into the judicial process is remote." *Id.* Thus, for all of the reasons discussed above, the court concludes that primary jurisdiction should rest with DOL in this case.

Because it concludes that the doctrine of primary jurisdiction applies, the court must determine whether to stay the case or dismiss it without prejudice. The court "must take care that its deferral [does] not unfairly disadvantage either party," with the "paramount concern" being that "deferral not work a time-bar to claims that will in all likelihood be refiled in federal court after the agency acts." *Johnson*, 86 F.3d at 11. In *Johnson*, the Second Circuit remarked that it had not expressed a preference between a stay and the combination of dismissal without prejudice coupled with equitable tolling. *Id.* The Second Circuit also stated that it had not yet decided "whether equitable tolling even applies in a primary jurisdiction case." *Id.* This court concludes that, since the Second Circuit has not expressed a preference, a stay is the preferable option in this case, especially since it avoids any potential issues about the statute of limitations and whether equitable tolling might be available.[10]

Meau argues that a stay is inappropriate, asserting that the current disputes before DOL—and any appeals to the Vermont courts—might not be resolved for years, or even during her lifetime. (*See* Doc. 52 at 9.) She suggests that a stay might impede her ability to prosecute her

---

[10] A stay also appears to be consistent with Vermont practice. *See Demag*, 146 Vt. at 611 (concluding that superior court erred in dismissing (for lack of subject matter jurisdiction) tort claims brought against workers' compensation carrier, but authorizing the court to stay the determination of the tort actions pending a final resolution of the administrative proceedings).

claims because her mental and physical conditions are deteriorating. (*See id.*) However, for the reasons described above, the court concludes that the advantages of deferring to DOL's process outweigh the risk of delay. Meau's concerns about delay would be present whether the court elected dismissal without prejudice or a stay.

Because it concludes that a stay is appropriate, the court does not reach Sentry's other arguments seeking dismissal.

## **Conclusion**

Sentry's Motion for Judgment on the Pleadings (Doc. 45) is GRANTED insofar as it seeks a stay. This case is STAYED until the conclusion of the administrative workers' compensation matter before DOL.

Dated at Rutland, in the District of Vermont, this 25 day of August, 2016.

Geoffrey W. Crawford, Judge
United States District Court